Lee Johns v. Commissioner. Ruby Johns v. Commissioner.
Johns v. Commissioner
Docket Nos. 52611, 52612.
United States Tax Court
T.C. Memo 1956-119; 1956 Tax Ct. Memo LEXIS 176; 15 T.C.M. (CCH) 603; T.C.M. (RIA) 56119; May 17, 1956
*176 Amos E. Jackson, Esq., 238 Royal Palm Way, Palm Beach, Fla., for the petitioners. Lee C. Smith, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion In these proceedings, consolidated for trial and opinion, the respondent has determined deficiencies in the Federal income tax of each petitioner for the year 1946 in the amount of $2,877.33. Some of the issues raised by the pleadings herein have been settled by stipulation. The issues remaining for our decision are: (1) whether payments received in 1946 by a partnership composed of the petitioners, pursuant to yacht charter parties which were to be performed in 1947 constitute income in 1946 as respondent has determined, or in 1947 as petitioners contend, and (2) whether the sales price of the yacht "Nicoya," which was sold in 1946 pursuant to an option in a charter party, was $67,500 as reported in the partnership's income tax return for that year, or was $86,250, as now contended for by petitioners on the ground that the consideration of $18,750 which the charterer agreed to pay for the hire of the yacht should be considered as part of the purchase price for the sale later made pursuant to the option. *177 Findings of Fact The parties herein have filed a stipulation of facts together with a number of exhibits identified therein. We find the facts to be as stipulated and incorporate herein by this reference the stipulation and the exhibits. The petitioners, Lee Johns and Ruby Johns, are husband and wife who lived during the year 1946 in Miami, Florida. The petitioners filed separate individual Federal income tax returns on the cash basis for the taxable year 1946 and a partnership return in the name of Lee Johns Motors, a partnership, for the taxable year 1946 with the collector (now district director) of internal revenue, Jacksonville, Florida. The partnership return stated that it was prepared on the accrual basis. The Lee Johns Motors is a family partnership, sometimes referred to herein as the partnership, composed of Lee Johns and his wife, Ruby Johns, each owning one-half of the partnership. The activities of this partnership are varied, including the purchase, sale and rental of used automobiles, yachts, construction equipment, barges and junk. This partnership began in June 1933 and throughout its existence, to and including 1946, when an accountant was employed, its *178 books of account consisted solely of a cash journal which was kept by Ruby Johns and Tillie Royal. On November 9, 1946, the petitioners, Lee and Ruby Johns, and Hugh J. Chisholm entered into an agreement to charter the yacht "Masquerader" to the latter for the period February 15, 1947, to April 15, 1947, at which time $2,500 of the total charter hire sum of $16,200 was paid, but not reported as taxable income in the year 1946 by the partnership, Lee Johns Motors. On December 21, 1946, the petitioners, Lee and Ruby Johns, and Ernest L. Woodward (now deceased) entered into an agreement to charter the yacht "Captiva" to Woodward for the period February 1, 1947, to March 31, 1947, at which time $5,000 of the total charter hire sum of $17,700 was paid, but not reported as taxable income in the year 1946 by the partnership, Lee Johns Motors. Although the $5,000 was paid to petitioners on December 21, 1946, the charter party was not actually signed by Woodward until February 11, 1947. The petitioners, Lee and Ruby Johns, received payments from Howard Gould of New York City, under a charter agreement executed April 9, 1946, for the charter of the yacht "Nicoya" for the period April 19, 1946, to *179 July 3, 1946, as follows: Date of Payment
Amount
March 30, 1946
$ 5,000
April 9, 1946
13,750
The petitioners, Lee and Ruby Johns, received payments from Herbert Hoover of New York City, under a charter agreement executed on October 2, 1946, for the charter of the yacht "Masquerader" for the period December 23, 1946, to January 15, 1947. These payments were reported as taxable income in the respective year of receipt by the petitioners, as follows: Date of Payment
Amount
October 9, 1946
$1,800
January 2, 1947
5,400
The payments received by petitioners in 1946 under the charter parties above referred to were called for and specified in the provision of the charter parties covering "Term, Hire and Payment" which reads in blank as follows: "In consideration of the covenants hereinafter contained, the said Owner agrees to let and the said Charterer agrees to hire the said Yacht from on the day of 19 to on the day of 19 for the total sum of Dollars, of which amount Dollars shall be paid on the signing of this Agreement and the balance thereof in advance payments as follows:" The yacht charter party agreements entered into by petitioners with *180 Chisholm, Woodward, Gould and Hoover, contain identical provisions relative to the return of any of the charter fees by the owner to the charterer, which provisions are as follows: "Delivery "2. The Owner agrees to deliver the yacht at on the day of 19 in full commission and in proper working order, outfitted as a yacht of her size, type and accommodations, with full equipment, inclusive of that required by law, and fully furnished including china, linen, glass and silverware, staunch, clean and in good condition throughout and ready for service; and agrees to allow demurrage pro rata to Charterer for any delay in delivery. "But should it be impossible for the Owner to make delivery as stipulated through causes beyond his control and should such delivery be not made within * days thereafter then this Agreement may be cancelled by the Charterer and any charter money paid in advance shall be returned to him. "Accidents "5. The Owner agrees that should the yacht after delivery sustain breakdown of machinery or be disabled or damaged by fire, grounding, collision or other cause so as to prevent the use of *181 the vessel by the Charterer for a period of not less than ** consecutive hours at any time, the same not being brought about by any act or default of the Charterer, the Owner shall make a pro rata return of hire to the Charterer for such period in excess of the said *** hours the yacht shall be disabled or unfit for use. "Provided, however, that in case the yacht be lost or said damage be so extensive that the yacht cannot be or is not repaired within *** days, then the charter price shall be abated pro rata and charter money paid in advance shall be rebated pro rata from the time of such damage, and the Charterer shall have the right to terminate this charter. "*Usually 3 days for each month of charter time "**Usually 24 hours on charters for one month or less "***Usually one-quarter of the charter term." In a space provided in the charter party with Howard Gould covering the yacht "Nicoya" for "Conditions Additional (if any)" there appears the following language: "It is further agreed by the parties hereto that the charterer [Gould] shall have the option to purchase the yacht at any time before June 10, 1946, for the sum of $67,500." On June 11, the partnership gave Gould *182 a receipt reading as follows: "Received of Howard Gould Sixty seven thousand five hundred Dollars for purchase of Yacht Nicoya. Lee Johns Motors by Tillie Royal" In the charter party with Gould covering the yacht "Nicoya", as in the other charters above referred to it was provided: "The owner agrees to keep the yacht fully insured against Fire, Marine and Collision risks, and with Protection and Indemnity coverage, for the term of this charter, the policy to be held by him as full protection for any and all loss or damage that may occur to, or by, the yacht during the charter period * * *." Petitioner, Lee Johns, can read and write only his own name. During the taxable year he wished to realize around $85,000 from the yacht "Nicoya". He was not conscious of any income tax problems and consulted no attorneys. He was not interested in whether his receipts in connection with this transaction were in return for the charter of the yacht or were in consideration for its sale. He had no intent contrary to the provisions of the charter party. In the partnership's Federal income tax return for the year 1946, signed by Lee Johns and Ruby Johns, there was included in "Schedule of Boat *183 Sales" the sum of $67,500 as the "Sale Price June 11, 1946" of the yacht "Nicoya". The partnership return filed by Lee Johns Motors, a partnership, for the year 1946, indicates that expenses of conducting the business operations of the partnership were deducted in the year in which incurred. The partnership did not keep its books on an accrual basis of accounting. Opinion KERN, Judge: The first issue herein is whether payments made to petitioners' partnership in 1946 upon the signing of charter parties covering certain yachts constitute income in the year of receipt or in the immediately following year when the charter parties were performed. These charter parties covered the letting and hiring of yachts and required petitioners to furnish the crews required for their operation. Thus, so far as petitioners were concerned, they were contracts which were part leases and part contracts for personal services. Upon certain specified contingencies outlined in our findings the payments might have been refundable to the charterers, but until those contingencies occurred (and in the instant case they did not occur), petitioners' partnership held them of right and without any restriction *184 as to their use or application. Under the rationale of ; and , we decide this issue in favor of respondent. This case is distinguished from , in that in the latter case the payment in question was an advance deposit on an executory contract of sale. See . In the instant case there is not involved the question of "gross income." The second issue must also be decided against petitioners. We are not convinced by the record herein that the transaction involving the sale of the yacht "Nicoya" was not accurately delineated in the written documents in evidence and was not correctly reflected in the income tax return of petitioners' partnership. The case of , relied upon by petitioners is distinguishable in at least three important respects: (1) there is no convincing evidence in the instant case that petitioners intended the transaction to be other than that described in the written contract; (2) the amount *185 recited in the charter party as being paid for the hire of the yacht for the period involved appears to be a fair rental in the light of the other charter parties here in evidence; and (3) petitioners, not Gould, were the insurers of the yacht during the period of the charter. Decision will be entered under Rule 50. Footnotes
*. Footnotes to charter provisions appear on the following page.↩